Rickey Ray RECTOR *v.* Bill CLINTON, Governor of
Arkansas, et al.

92-75                                              823 S.W.2d 829

Supreme Court of Arkansas
Opinion delivered January 22, 1992

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Jack Gillean*, Dep. Att'y
Gen., for appellee.

PER CURIAM. Rickey Ray Rector brought a declaratory
judgment action in the Circuit Court against Governor Clinton,
Lieutenant Governor Jim Guy Tucker, Attorney General Win-
ston Bryant, Superintendent of Prisons A.L. Lockhart, Depart-
ment of Human Services Director Terry Yamauchi, Arkansas
State Hospital Division Director Jan Thames, and State Hospital
Forensic Unit Director O. Wendell Hall. He asked the Circuit
Court to declare unconstitutional Ark. Code Ann. § 16-90-
506(d)(1) (1987) which describes the manner of determining

whether an inmate facing execution is insane and thus not to be executed.

In addition to declaratory judgment, Mr. Rector sought mandamus or prohibition against his impending execution as a capital felon and asked the Circuit Court to stay his execution pending its decision on all these remedies. A hearing was held, and the Circuit Court declined to give any relief to Mr. Rector who then filed the record from that proceeding with this Court and presented a motion for a temporary stay of execution pending appeal. We deny the motion.

Mr. Rector suffers from an injury to his brain. He shot himself in the head shortly after committing the murder for which he received the death penalty. His contention is that he is ineligible for execution for two reasons. First, in *Ford* v. *Wainright*, 477 U.S. 399 (1986), it was held that a state cannot execute persons whose mental illness prevents comprehension of the reasons for the penalty or its implications. Second, he contends the Arkansas standard limiting executions of persons with mental deficiencies is more stringent than that of the *Ford* case, and should prevent his execution if his current mental impairment prevents him from assisting his counsel in coming up with reasons to stay the execution, citing *State* v. *Helm*, 69 Ark. 167, 61 S.W. 915 (1901), and *Howell* v. *Kincannon*, 181 Ark. 58, 24 S.W.2d 953 (1930).

At the hearing before the Circuit Court the State conceded that, if Mr. Rector's condition had changed since earlier determinations that he was eligible for execution under the test of the *Ford* case, thus making him currently ineligible for execution under that guideline, he would be entitled to a stay. The Circuit Court found that no such change had occurred. Mr. Rector challenges that factual determination. He also reasserts his contention that the Arkansas legal standard on execution of mentally deficient persons is more stringent than that pronounced in the *Ford* case test.

Mr. Rector was convicted in 1981 of shooting and killing Conway Police Officer Bob Martin. We affirmed the conviction, and *certiorari* was denied by the United States Supreme Court. *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983), *cert. denied*, 466 U.S. 988 (1984). His counsel argued on appeal that

106

we should not permit him to be executed because of his brain injury. In response to that argument, we wrote:

> Counsel insist, however, that because Rector's self-inflicted brain injury had substantially the same effect as a frontal lobotomy, causing him to be mildly retarded mentally and to be somewhat unemotional, the State of Arkansas should not permit the execution of a person in that condition. This case differs, however, from *Giles* v. *State*, 261 Ark. 413, 549 S.W.2d 479 (1977), cert. denied 434 U.S. 894, in that there the jury arbitrarily disregarded an impaired mental condition that existed when the crime was committed, which led us to reduce the sentence. Here Rector had no such mental impairment until he attempted suicide after the crime — facts that were before the jury. In our opinion such circumstances arising after the crime affect the matter of clemency and should properly be addressed to the Governor, who has the facilities for investigating all the facts. Although we may reduce a death sentence to life without parole, and have done so in the past, that action is taken as a matter of law, not as an act of clemency.

Although we did not recite the Statute in our opinion, our statement that the matter of competency for execution after the courts have done with the case fits well within the procedure provided by Ark. Code Ann. § 16-90-506 (1987). Subsection (a)(1) suggests that this Court may stay the execution upon "writ of error." We make no distinction between writ of error and appeal. *Pope* v. *Latham*, 1 Ark. 66 (1838). *Cf. Rose* v. *Rose*, 9 Ark. 507 (1848). In subsection (c), it is provided that,

> The only officers who shall have the power of suspending the execution of a judgment of death are the Governor; in cases of insanity or pregnancy of the convict, the superintendent of the state penitentiary as provided in subsection (d) of this section; and in cases of appeals, the Clerk of the Supreme Court, as prescribed by law.

Subsection (d) of the Statute gives the Superintendent discretion to transfer a condemned felon to the Arkansas State Hospital if the Superintendent has reason to believe the convict under sentence of death is "insane" and "thereupon to notify the

Governor of this action." It is provided that if the inmate is found to be sane, the hospital turns him back to the Superintendent and the Governor sets a date.

It seems clear to us that the Circuit Court had no authority to stay the execution on the basis of the allegation of Mr. Rector's claim of current insanity; it lacked jurisdiction. That was our specific holding in the *Howell* case. The appeal of the conviction and the death sentence is long since decided in this Court, and thus the matter rests with the executive branch of government. That is as it should be, as otherwise recurring last-minute appeals on the issue of current sanity could prevent an execution indefinitely with no good reason. Even death cases must come to an end.

In the hearing before the Circuit Court, the Judge stated that there is no Arkansas standard more stringent than that of *Ford* v. *Wainwright, supra.* That is correct. Although we quoted a statement from Blackstone in the *Helm* and *Howell* cases to the effect that English law precludes the execution of an insane person who might otherwise be able to assist in stating a reason the execution should not occur, that statement had nothing to do with the holding in either of those cases. The *Helm* case was a forgery conviction appeal, and in the *Howell* case the issue was whether a circuit court had the power to interfere with an execution after pronouncing sentence. We held that the authority had existed until the General Assembly enacted statutes on the procedure limiting that authority to the Governor, the Superintendent, and this Court.

As to Mr. Rector's contention that the Circuit Court erred in holding that the United States Constitution, as interpreted in *Ford* v. *Wainwright*, precludes his execution, we are not convinced of any error. Before the Circuit Court was the record of federal court proceedings. Mr. Rector was sent by the United States District Court to the United States Medical Center for Federal Prisoners for evaluation. The psychiatrist and psychologist who reported to the Court in 1989 observed Mr. Rector for 30 days and reported that he was aware of the punishment about to be inflicted on him and why. They also reported that "Mr. Rector would have considerable difficulty due to his organic deficits in being able to work in a collaborative, cooperative effort with an attorney," and that Mr. Rector would "not be able to recognize or

understand facts which might be related to his case which might make his punishment unjust or unlawful."

The latter determination was made in response to the District Court's request that Mr. Rector be evaluated not only on the basis of the *Ford* case test but the test according to § 7-5.6 of the American Bar Association Criminal Justice Mental Health Standards. The ABA test adds to the *Ford* case test the requirement that the convict possess the ability to inform counsel or the court of any fact which might exist which would make the punishment unjust or unlawful.

The District Court found that the *Ford* case test had been satisfied in Mr. Rector's case and that the ABA standard was irrelevant. Relief was refused, *Rector* v. *Lockhart*, 727 F. Supp. 1285 (E.D. Ark. 1990), and that decision was affirmed. *Rector* v. *Clark*, 923 F.2d 570 (8th Cir. 1991), *cert. denied sub nom. Rector* v. *Bryant*, ___ U.S. ___, 115 L.Ed.2d 1038; *reh. denied* ___ U.S. ___, 115 L.Ed.2d 1115.

Our decision is (1) the Circuit Court lacked jurisdiction to stay the execution on the basis of the allegation that Mr. Rector is ineligible for execution due to his mental condition, (2) even if that Court had such authority we could not disagree with its finding that there had been no change in Mr. Rector's condition since his evaluation by federal authorities in 1989, and (3) Arkansas law does not pose for execution of a person who may be mentally deficient a standard different from that declared by the United States Supreme Court in *Ford* v. *Wainwright*. The matter of clemency rests with the executive branch.

The motion is denied.

CORBIN, J., concurs.