480

Eugene Wallace PERRY, Plaintiff,

v.

Leroy BROWNLEE, et al., Defendants.

No. LR–C–97–609.

United States District Court,
E.D. Arkansas,
Western Division.

July 31, 1997.

Walter Craig Lambert, Little Rock, AR, for Plaintiff.

Winston Bryant, Arkansas Atty. Gen. by Kelly K. Hill, Asst. Atty. Gen., Little Rock, AR, for Defendants.

## ORDER GRANTING TRO AND STAY OF EXECUTION

GEORGE HOWARD, Jr., District Judge.

On July 22, 1997, plaintiff ("Perry"), an inmate on death row with a scheduled execution date of August 6, 1997, filed this action pursuant to 42 U.S.C. sec. 1983 alleging violation of his constitutional rights aris-

ing from the denial of clemency.[1] Perry seeks a temporary restraining order ("TRO") and a stay of the scheduled execution. He also seeks a new clemency hearing.

Defendants have filed a motion to consolidate this action with PB–C–97–295, pending before the Honorable Stephen Reasoner, Chief Judge for the Eastern District of Arkansas. A review of the various actions Perry has filed recently is necessary to determine whether consolidation is appropriate.

On July 2, 1997, Perry filed an action under 42 U.S.C. sec. 1983 against various members of the Arkansas Department of Correction ("ADC") and the Arkansas Post Prison Transfer Board ("PPTB") alleging that ADC employees disseminated false information concerning a book entitled *The Dragon's Touch* which tainted Perry's clemency proceedings and therefore denied him the due process right to a fair, unbiased consideration of his request for executive clemency. This action, docketed as PB–C–97–294, was filed before the clemency hearing.

On July 2, 1997, Perry filed a separate sec. 1983 action, PB–C–97–295, based on the same set of underlying facts. However, in this action, Perry alleged that his prior habeas proceedings in the Eighth Circuit were tainted by the misinformation. In particular, Perry alleged that the misinformation the Eighth Circuit received—that Perry was attempting to gain access to an instructional book on how to commit murder without a weapon—tainted the appellate court's decision of Perry's claim of actual innocence.

Perry filed a *Notice of Related Case* in PB–C–97–294 and PB–C–97–295 because both causes of action arose from the alleged prejudice flowing from the spread of misinformation concerning Perry's possession of *The Dragon's Touch.* PB–C–97–294 was assigned to Judge Reasoner while PB–C–97–295 was assigned to Judge Moody.

On July 3, 1997, the Court issued an Order dismissing PB–C–97–294.[2] Judge Reasoner determined that plaintiff's claim was foreclosed by *Wainwright v. Brownlee*, 103 F.3d 708 (8th Cir.1997). On that same day, PB–C–97–295, was transferred to the docket of Judge Reasoner.

On July–22, 1997, Perry filed this action, in light of the events that transpired at the clemency hearing. In particular, Perry contends that he has a due process right to consideration of his claim of actual innocence raised in an executive clemency proceeding, and that the failure of the PPTB to consider Perry's claim of innocence violated his constitutional right to due process. Perry also contends that his right to equal protection was violated in that the PPTB considered Perry's guilt as a basis for denying clemency but refused to consider his innocence as a basis for granting clemency. Thus, Perry asserts, he was unconstitutionally forced to admit guilt and waive his Fifth Amendment right in order to qualify for consideration for clemency.

■ It is clear that this case does not involve the same legal or factual issues as PB–C–97–295. The only common factor in the two cases is that Perry seeks an injunction against the carrying out of the execution on August 6, 1997. Consolidation is not warranted on that basis. Nor will consolidation result in judicial economy. The issue of the constitutionality of the clemency process itself is distinct from the issue of the disposition of the habeas proceeding. The issue in this case, therefore, warrants independent analysis and review by the Court. Thus, defendants' request to consolidate must be denied.

Also pending before the Court is plaintiffs request for a TRO and stay of execution. Defendants have filed a motion to dismiss.

---

1. Section 1983 is the proper vehicle for Perry to raise his claim challenging the constitutionality of the clemency proceeding. *See Otey v. Hopkins*, 5 F.3d 1125, 1131 (8th Cir.1993), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2768, 129 L.Ed.2d 881 (1994). *But see Woratzeck v. Ariz. Board of Exec. Clemency*, 117 F.3d 400, 402–03 (9th Cir. 1997) (finding that plaintiff may raise claim that

procedural defects in clemency hearing denied him due process rights under section 1983, but noting that the question is "very difficult.")

2. The Order was signed by Judge Moody as Judge Reasoner was out of town and the clemency hearing was scheduled for July 7, 1997.

■ Defendants' argument concerning insufficiency of service of process is without merit. The period of time for serving defendants has not expired. Furthermore, the Court is of the opinion that the Attorney General's motion to consolidate filed on behalf of the PPTB and Governor waived any claim with regard to service. The Attorney General has, by filing the motion to consolidate, entered his appearance on behalf of the State defendants.

■ Furthermore, even if defendants had not been served, the Court would still have the authority to enter a TRO without notice to defendants. *See* Fed. R. Civ. Pr. 65(b).

■ The Court is not of the opinion that plaintiffs complaint has failed to state a claim. Recently, the Sixth Circuit found that the State of Ohio's clemency procedure was as an "integral part" of the overall adjudicative system, and that it must comport with due process. *Woodard v. Ohio Adult Parole Authority,* 107 F.3d 1178, 1186–1188 (6th Cir. 1997). The court declined to address what process is due, leaving it to the district court to determine whether the plaintiffs due process rights were violated. The Supreme Court granted certiorari on June 27, 1997. Two questions are presented. (1) May state clemency procedures be reviewed under due process limitations on state's overall scheme of adjudication of crimes and punishment established by *Evitts v. Lucey,* or does *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), contain the sole due process limitations on those procedures? (2) Do inmate interviews, held voluntarily at the request of an inmate as part of state clemency procedure impose unconstitutional condition on an inmate's Fifth and Fourteenth Amendment privilege against compelled self-incrimination? —— U.S. ——, 117 S.Ct. 2507, 138 L.Ed.2d 1011 (1997).

Clemency is not an insignificant part of the adjudicative process. The Supreme Court has held that the proper forum for raising claims of actual innocence is that of executive clemency. *Herrera v. Collins,* 506 U.S. 390, 416–417, 113 S.Ct. 853, 868–69, 122 L.Ed.2d 203 (1993). Furthermore, the constitutionality of clemency procedures is not a matter that is well-settled or easily dismissed. A number of members of the Eighth Circuit have expressed concern regarding the lack of due process in the clemency proceeding. *See Wainwright v. Brownlee,* 103 F.3d 708, 710 (8th Cir.1997) (Henley, J. concurring) ("I am troubled by the state of law in this field and look forward to possible changes."); *Otey v. Stenberg,* 34 F.3d 635, 639–642 (8th Cir.1994) (Gibson, John R., J., dissenting); *Pickens v. Tucker,* 23 F.3d 1477, 1478 (8th Cir.1994) (Arnold, M., J., dissenting).

The Court notes that the clemency procedures in Ohio are similar to those in Arkansas. In both states the Governor has absolute discretion in granting or denying executive clemency; however, the decision must be made after mandated statutory procedures have been completed. *See* Ark. Const., Art. VI, sec. 18, Ark. Code Ann. secs. 5–4–607, 16–93–204, –207 (1993 and Supp.1995); Ohio Const., Art. III, sec. 11, Ohio Rev. Code Ann. sec. 2967.03–.12 (West 1997). Thus, the Court is of the opinion that *Woodard* is applicable in this instance and that resolution of the issue by the Supreme Court may have bearing on this case. Cf. *In re Sapp,* 118 F.3d 460, 465–66 (6th Cir.1997) (grant of certiorari in *Woodard* has no bearing on resolution in this case as Kentucky does not have specific clemency procedure).

Perry raises significant due process and equal protection claims. These issues are complex, novel, and require further development and close scrutiny. "These are delicate questions, which courts—especially federal courts—should approach with great caution and deference." *Woodard,,* 107 F.3d at 1188. Perry should have an opportunity to develop more fully his claims in an evidentiary hearing, to be scheduled by separate order. The parties are directed to file within five days a status report outlining witnesses, exhibits, and evidence to be presented at the hearing.

Thus, given the above, as well as the crucial role clemency plays in the implementation of Arkansas' capital punishment laws, *Otey v. Stenberg,* 34 F.3d at 641 (Gibson, John R., J. dissenting), the pendency of the issue of due process in clemency proceedings

before the Supreme Court, the importance of ensuring due process to a capital defendant, and the irreparable harm plaintiff would suffer should the execution go forward, the Court must find that plaintiffs request for a TRO should regranted. The Court enjoins the state from proceeding with the August 6, 1997, execution and enjoins defendants from proceeding further with Perry's clemency proceedings.

Accordingly, the motion to consolidate is denied; defendants' motion to dismiss is denied. plaintiffs request for a TRO is granted.